## U.S. BANKRUPTCY COURT
### District of South Carolina

Case Number: **16-00638-jw**

## ORDER ALLOWING CLAIM

The relief set forth on the following pages, for a total of 6 pages including this page, is hereby ORDERED.

**FILED BY THE COURT**
**06/30/2016**



*John E Waites*

US Bankruptcy Judge
District of South Carolina

Entered: 06/30/2016

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF SOUTH CAROLINA

IN RE:

Raymond Foster
Shawna Helene Mosley Foster

Debtors.

Case No. 16-00638-jw
Chapter 13

## ORDER ALLOWING CLAIM

This matter is before the Court on the Objection to Proof of Claim filed by Raymond Foster and Shawna Helene Mosley Foster ("Debtors") to the claim filed by Highland Ridge Homeowners Association, Inc. (the "Association"), Claim Number 6, as amended. The Association filed a Response to the Objection and a hearing was held. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§157 and 1334. Pursuant to Federal Rule of Civil Procedure 52, which is made applicable to this contested matter by Federal Rules of Bankruptcy Procedure 7052 and 9014(c), the Court makes the following findings of facts and conclusions of law[1]:

### FINDINGS OF FACT

1. Highland Ridge subdivision is a residential subdivision located in Horry County, South Carolina ("Highland Ridge"). The Declaration Covenants, Conditions and Restrictions for Highland Ridge (hereinafter the "Covenants") were filed in the Office of Register of Deeds for Horry County on March 9, 2005. The Covenants, among other things, authorize assessments for the improvement, maintenance and operation of common properties of the Association.

2. In August 2005, after the Covenants were recorded, the Debtors purchased a single family residence in Highland Ridge described as 160 Bonnie Bridge Circle, Myrtle Beach, Horry County, South Carolina ("Property"). The Property was conveyed by deed recorded on August 23,

---

[1] To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such, and to the extent any of the following conclusions of law constitute findings of fact, they are so adopted.

2005 in the Office of Register of Deeds for Horry County, Deed Book 2963 at 1055 ("2005 Deed").

3. The Property appears to be part of the tracts subject to the Covenants.

4. As stated in the recorded Covenants, the purpose of the easements, restrictions, covenants, and conditions is to protect the value and desirability of the real property described by the Covenants, including the improvement and maintenance of the Common Areas.

5. Article IV of the Covenants provides for the charge of assessments and the creation of the lien for said assessments:

> Section 1. Creation of the Lien and Personal Obligation of Assessments. The Owner of any Lot by acceptance of a deed therefore, whether or not it shall be so expressed in such deed, is deemed to covenant and agree to pay to the Association: (1) annual assessments or charges, and (2) special assessments for capital improvements, such assessments to be established and collected as hereinafter provided.

6. Section 1 further provides that:

> The annual and special assessments, together with interest, costs and reasonable attorney's fees shall be a charge on the land and shall be a continuing lien upon the property against which each such assessment is made. Each such assessment, together with interest, costs, and reasonable attorney's fees, shall also be a personal obligation of the person who was the owner of such property at the time when the assessment fell due.

7. In the event of nonpayment of the assessments, Section 8, Article IV of the Covenants provide that:

> The Association may bring an action at law against the Owner personally obligated to pay the same or foreclose the lien created herein against the property in the same manner as prescribed by the laws of the State of South Carolina for the foreclosure of Mortgages, and interest, costs and reasonable attorney's fees for representation in such action or foreclosure shall be added to the amount of such assessment.

8. The introduction to the Covenants provides that the provisions stated therein "shall run with, the real property and be binding on all parties having right, title or interest in the described properties." Article VIII, Section 3 of the Covenants further states that the "covenants and

restrictions of this Declaration shall run with and bind the land . . . ."

9. On February 12, 2016, the Debtors filed for relief under Chapter 13 of the United States Bankruptcy Code. The Debtors are retaining the Property as part of their proposed Plan of Reorganization filed on February 12, 2016.

10. On March 7, 2016 and as later amended on April 26, 2016, the Association filed a Proof of Claim, Claim Number 6, setting forth a secured claim in the amount of $1,200 ("Claim") for pre-petition homeowner's association assessments, costs, expenses, and post-petition attorney's fees associated with this bankruptcy matter. A copy of the recorded Covenants is attached to the Association's Claim.

11. On April 27, 2016, the Debtors filed an Objection to the Association's Claim. The Debtors do not dispute the amount of the Claim. However, the Debtors assert that the Claim is unsecured because the Association did not perfect its lien for the delinquent assessments, fees and costs by failing to file a notice of lien with the Clerk of Court for Horry County.

## CONCLUSIONS OF LAW

The Association asserts that, pursuant to the provisions of the recorded Covenants, it has a contractual right to a charge and lien on the Property for the past due assessments, fees and costs listed in the Claim.

Covenants requiring the payment of maintenance assessments are contractual in nature and bind the parties to the covenants in the same manner as other contracts. First Federal Savings and Loan Ass'n of Charleston v. Bailey, 450 S.E.2d. 77, 79 (S.C. Ct. App. 1994). Covenants requiring property owners to pay fees for improvements, maintenance or other services to a homeowners association have been held to run with the land. Id. For a covenant to run with the land, there must also be an indication that the parties intended for the covenant to run with the

land. Harbison Community Ass'n, Inc. v. Mueller, 459 S.E.2d 860 (S.C. Ct. App. 1995). When the language imposing such covenants is unambiguous, the covenants will be enforced according to their obvious meaning. First Federal, 450 S.E.2d at 79.

The language of the Association's Covenants for assessments clearly shows the Covenants were intended to run with the land. Both the Introduction and Article III, Section 3 state that the Covenants shall run with and bind the land and be binding on all parties having right, title or interest in the described properties.

Here, the Debtors owed the Association outstanding assessments at the time the bankruptcy was filed. The Covenants specifically provided that a lien would attach to the owner's lot for said assessments. By acceptance of the 2005 Deed, the Debtors accepted that their Property would serve as security for payment of homeowner's assessments. Therefore, the assessments, fees and costs included in the Claim constitute liens against the Property.

The issue of whether a notice of lien is required to be filed to perfect the lien for assessments was addressed by the Fourth Circuit in Kingston at Wakefield Homeowners Ass'n v. Castell, No. 13-01884, 2014 WL 6601167 (4th Cir. Nov. 1, 2014). In *Kingston*, the Court held that the assessments were unsecured because the homeowner's association failed to obtain the lien in accordance with the North Carolina Planned Community Act and failed to follow the detailed mandatory procedures for obtaining an assessment lien established in the homeowner's association's declarations. However, the facts in this matter are distinguishable from those in *Kingston*. At present, there is no South Carolina state statute specifically providing a procedure for obtaining a lien for an assessment charged by homeowner's associations.[2] Additionally, the Covenants in the present case specifically provide that the remedy for seeking payment of

---

2    South Carolina has the Horizontal Property Act, S.C. Code Ann. §27-31-20 *et seq.* (2012), which is not applicable to this Association.

outstanding assessments is to foreclose the lien created by the Covenants against the property in the same manner as prescribed by the laws of the State of South Carolina for the foreclosure of Mortgages.  There is no requirement that the Association file a notice of lien for homeowner's association assessments prior to foreclosure.  Accordingly, the Association is not required to file a notice of lien and the outstanding assessments, fees and costs provided for in the Claim are perfected liens against the Property.

At the hearing, the Debtors asserted that the filing of the notice of lien is necessary to give all parties notice of the asserted liens in the Property.  A covenant is enforceable against a subsequent grantee, even if not in the grantee's deed, if the grantee has actual or constructive notice of the covenant.  Harbison at 863 (citing 20 Am.Jur.2d Covenants, Conditions and Restriction §26 (1965)).  A homeowner is charged with constructive notice of any restriction properly recorded within the chain of title. Id. (citing Carolina Land Co. v. Bland, 265 S.C. 98, 217 S.E.2d 16 (1975)).  Here, the Covenants were recorded in Horry County prior to the recording of the 2005 Deed to the Property and can be found within the Debtors' chain of title.  Thus, the Debtors had constructive notice of the Covenants and are bound by the terms of the Covenants.

## CONCLUSION

Therefore, Debtors' Objection to Claim is overruled and Association's Proof of Claim, Claim Number 6, is allowed as a secured claim in the amount of $1,200.00.

AND IT IS SO ORDERED.